STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
Docket No. CV-21-112

BEVERLY FOURNIER,
          Plaintiff,

      v.

DAMIAN WEST,
          Defendant.

)
)
)
)
)
)
)
)
)

**JUDGMENT**

Pending before the court is Plaintiff, Beverly Fournier's, complaint for damages resulting from non-payment of money owed to her by Defendant, Damian West. A hearing was conducted on September 23, 2022. Plaintiff was present and self-represented. Defendant was present and self-represented. The court heard testimony from both of the parties as well as Plaintiff's son, Mark Fornio, and admitted several exhibits. The parties were afforded an opportunity to present evidence upon all issues before the court. Based on the testimony presented and the exhibits admitted, the court finds and adjudges as follows.

### Factual Background

Plaintiff and Defendant have known each other for many decades, kept in contact with each other, and at various times been involved in a romantic relationship. In the fall of 2018, Defendant was going through a difficult divorce and was experiencing financial hardship as a result. He reached out to Plaintiff to borrow money. Plaintiff, wanting to help Defendant, borrowed money from her own boss and deposited $1,000.00 into Defendant's bank account. After this deposit, Plaintiff again agreed to lend Defendant money, this time depositing $2,500.00 into his account. At the time of these transactions, Plaintiff resided in Each Lake, Maine while Defendant was residing in Vassalboro, Maine, a distance of many hours.

Over the course of the following year, Plaintiff believes she gave Defendant over $17,000.00. During this timeframe, Plaintiff and Defendant had rekindled a romantic relationship. The parties stayed for periods of time in

1

each other's homes, but each also maintained his/her own residence, in Eagle Lake and Vassalboro, respectively. As the relationship continued, Plaintiff began to realize that Defendant was not good at managing his money, paying his bills and that he was always "crying poverty". Eventually, Plaintiff stopped giving Defendant money. When Defendant asked Plaintiff to co-sign for a truck loan, Plaintiff informed him that she was not assisting him financially anymore. The parties' romantic relationship ended shortly thereafter.

Although Plaintiff gave Defendant a substantial amount of money over the course of one to two years, she never made a specific arrangement with Defendant as to repayment of the sums. She did not keep an accounting of any money given to Defendant and she did not record any money received from Defendant. While both parties agreed that some money given to Defendant was a loan, they did not agree on the amount of the loan, the manner in which the loan was to be repaid, nor the timeframe in which the money was to be repaid. Conversely, each had his or her own idea of how the loan was (or had not been) repaid. Plaintiff asserted that she only received $150.00 (but then agreed maybe it was $450.00) from Defendant. Defendant asserted that he paid for her expenses, such as her cellphone, in repayment for the money borrowed. Defendant also stated that he had gave money to Plaintiff and that some of the money Plaintiff was now asserting was a loan, was really Defendant's money which she deposited for him after he was paid cash for various odd jobs that he was doing while visiting her in Eagle Lake.

Throughout the parties' relationship, and their periods of co-habitation, money flowed back and forth between them, and that as a result neither party could state with any certainty how much money was given and how much was repaid. Both parties agreed that there was no accounting record of the loan, the amount given, or the amounts repaid. At trial, Plaintiff could not give an exact accounting of exactly how much money she was seeking from Defendant.

## Discussion

The Restatement (Second) of Contracts defines a contract as "a promise or a set of promises for the breach for which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restat 2d of Contracts § 1. Contracts require "a bargain in which there is a manifestation

2

of mutual assent to the exchange and a consideration." Restat 2d of Contracts § 17. This element of mutual assent may also be referred to as a "meeting of the minds." Restat 2d of Contracts § 17, cmt. c. A manifestation of mutual assent exists when it "is *clear* that a mental reservation of a party to a bargain does not impair the obligation he purports to undertake." *Id.*

Based on the evidence presented, the Court does not find sufficient evidence that the statements of each party rose to the level of an offer that would be sufficient, if accepted, to create a contract. It is unclear based on the testimony, exactly how much money was given, whether each transaction represented a loan or a gift, and whether there as a sufficient meeting of the minds as to any expected repayment of the money by Defendant to Plaintiff. What is clear from the evidence, is that Defendant accepted a lot of money from Plaintiff. Further, at least at various times in their relationship, he intended to pay her back for her goodwill. However, the record does not provide sufficient proof, even by a preponderance, as to the exact amount in question, and what amount was repaid, and the terms of the repayment. The court finds that it is impossible to define with any precision or clarity the contents of any promise upon which a contract could be enforced.

Therefore, for the reasons set forth above, the court concludes that the Plaintiff has not met her burden in establishing an offer or promise and acceptance that can be enforced in this action.

**The entry is:**

Judgment for DEFENDANT.

The Clerk is Ordered to incorporate this Order by reference on the Civil Docket in accordance with Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: November 15, 2022

Deborah P. Cashman
Justice, Maine Superior Court

3